Ferrin C. HARMAN and Henry Clay,
Plaintiffs-Appellants,

v.

DIVERSIFIED MEDICAL INVEST-
MENTS CORPORATION, a Colorado
Corporation, et al., Defendants-Appel-
lees.

No. 74–1551.

United States Court of Appeals,
Tenth Circuit.

Oct. 31, 1975.
Rehearing Denied Dec. 8, 1975.

John B. Ogden, Oklahoma City, Okl., for plaintiffs-appellants.

1. Of Perpetual's 80,000 shares of stock, appellants each owned 39,900. The remaining 200

Dan A. Rogers, Tulsa, Okl., for defendant-appellee John E. Schroyer.

Robert S. Baker, Oklahoma City, Okl., for defendants-appellees Diversified Medical Inv. Corp., Dr. Charles M. Farr, and Dr. Kenneth H. Bagwell.

Robert J. Emery, Oklahoma City, Okl., for defendants-appellees Chromalloy American Corp., Dr. William Friedman, Herbert Zlotnick, and James A. Mullins, a/k/a Jim Mullins.

Before HILL, HOLLOWAY and BARRETT, Circuit Judges.

HILL, Circuit Judge.

Ferrin Harman and Henry Clay (hereinafter referred to collectively as appellants) were the majority stockholders in, and the managing officers of, Perpetual Royalty Corporation (Perpetual), an Oklahoma corporation dealing in oil and gas royalties.[1]

On or about April 17, 1970, Trail Mines, Inc. (Trail Mines), a Colorado corporation, amended its Articles of Incorporation by changing its corporate name to Diversified Medical Investments Corporation (DMIC) and also underwent a recapitalization whereby its 15,000,000 outstanding shares of stock were reduced to 300,000 outstanding shares of stock.

Thereafter, on May 15, 1970, The Brayden Company, Inc. (Brayden), an Oklahoma corporation, was merged into DMIC. Through this merger the former stockholders of Brayden received an aggregate sum of 5,000,000 shares of DMIC stock in exchange for all of Brayden's corporate assets.

As a result of this activity, DMIC had 300,000 shares of Regulation A stock that was freely tradable. The balance of its stock was not subject to Regulation A exemption and was therefore restricted.

Appellees Charles Farr, Jim Mullins, Kenneth Bagwell, William Friedman and Herbert Zlotnick were directors of DMIC. Appellee John Schroyer held the

shares were owned in equal amounts by two persons not parties to the instant case.

power of attorney for the majority of Trail Mines' stockholders.

Chromalloy American Corporation (Chromalloy) did, in December, 1970, enter into a consulting agreement with DMIC. This agreement, however, was rescinded prior to performance thereunder.

David Dooley is a petroleum engineer. He was, at one time, employed by Perpetual and later was employed by Brayden. When Brayden merged into DMIC, he became an officer and director of DMIC. Dooley brought appellants and DMIC together, for the purpose of selling Perpetual's assets to DMIC.[2] Dooley made various representations to both DMIC and appellants as to the value of their respective bargains, and appellants and DMIC relied upon these assertions. The negotiations eventually resulted in the sale of Perpetual's stock and assets to DMIC in exchange for 240,000 shares of DMIC stock. Of this stock, appellants agreed to pay Dooley 40,000 shares if he would induce DMIC to purchase Perpetual's assets. This stock, however, was assigned to Dooley's secretary.

Appellants sold a portion of the stock they received from DMIC. All the stock they received was restricted but apparently did not bear a restrictive legend. Upon learning of sales by appellants of its restricted stock, DMIC placed stop orders on future sales.

On November 19, 1971, appellants and Perpetual filed a complaint in the United States District Court for the Western District of Oklahoma against, *inter alia,* DMIC and Chromalloy. The complaint claimed jurisdiction under 15 U.S.C. § 77a *et seq.,*[3] and alleged, *inter alia,* that DMIC and others had represented that the stock to be received under the agreement of merger was to be "free trading" and "fully marketable" stock which could be sold on the market without restrictions and would enjoy a specific range of values. The appellees cross-claimed that as a result of various misrepresentations by the appellants there had been no meeting of the minds in this regard. Perpetual was ordered dismissed by the court following an agreement to that effect by the parties. Thereafter, the trial court granted summary judgment on behalf of DMIC, Farr and Bagwell and dismissed the action as to Chromalloy, Schroyer, Zlotnick, Friedman, Mullins and Dooley. Finding that genuine issues of material fact existed, we reversed. *See Harman v. Diversified Medical Invs. Corp.,* 488 F.2d 111 (10th Cir. 1973).

Following remand, a brief trial to the court was held; the trial court admitted into evidence all depositions, interrogatories and answers, and exhibits, subject to relevancy and competency objections. One witness, appellant Clay, gave some testimony. A stipulation was entered that appellants' counsel could find someone in Oklahoma County who would testify that the proxies—voted to approve the April 17, 1970, amendments to Trail Mines' Articles—were all signed by the same person.

The trial court entered findings of fact and conclusions of law. We set forth the critical ones as follows:

Plaintiffs and DMIC relied upon representations made by David Dooley as to the value of their respective bargains. The assertions made as to the value of Perpetual's assets were grossly exaggerated. DMIC relied upon those assertions. Both plaintiffs and defendants relied upon Dooley's representations to each as to the value of their respective bargain (sic). Both plaintiffs and defendants were misled. [Finding of Fact]

Both plaintiffs and defendant DMIC made independent value judgments.

---

2. While working for Perpetual, one of Dooley's assigned tasks had been to attempt to sell Perpetual.

3. By an amended complaint, appellants alleged jurisdiction was under 28 U.S.C. § 1337, 15

U.S.C. §§ 77*l,* 77p, 77v and 78aa. Other sections of the securities laws were alleged as conferring "jurisdiction" for the recovering of damages and jurisdiction over the persons via extraterritorial service of process.

Each relied on mistakes as to facts which formed the essential elements of the contract. [Finding of Fact]

Plaintiffs and DMIC struck a bargain. Neither received that which was anticipated. There was not a meeting of the minds of the parties as to the material elements of the transaction. [Conclusion of Law]

The court rescinded the transaction between appellants and DMIC. DMIC was given 30 days to file a claim for the unsurrendered stock; appellants were given ten days following the claim's filing to respond. DMIC was ordered to deliver to appellants the assets of Perpetual which were in their possession. DMIC was also ordered to cooperate and execute the necessary instruments prepared by appellants' counsel which would allow the two men to dispose of Perpetual's mineral interests, if the two men elected to do that. The claim filed by DMIC represents that 124,200 of the 240,000 shares of DMIC stock had been deposited with the court; the claim valued the remaining 115,800 shares at $5,558.40.

On appeal, appellants' principal argument is that the trial court erred in ordering a rescission because the parties could not be placed in the same position they were in when they entered into the transaction. The specific allegations of this argument include: (1) appellants cannot return all the stock because some of it is beyond their control; (2) it is impossible to give title to the Perpetual assets back to the corporation because Perpetual has ceased to exist; (3) DMIC is insolvent and the judgments which have been rendered against DMIC have created liens on the Perpetual assets; (4) if the property is transferred to appellants individually, it would be necessary that it be transferred by DMIC which cannot legally transfer the property; and (5) Bache & Company sold some stock for appellants and was forced to redeem it because of a stop-order issued by DMIC's president; Bache & Company sued Clay and received a $13,000 judgment ("or thereabouts"); to rescind, DMIC should be required to pay that judgment.

The general rule is that a person seeking rescission must restore the other person as far as possible to the situation he occupied before the transaction in issue occurred. *Berland's Inc. v. Northside Village Shopping Center,* 447 P.2d 768 (Okl.1968); 12 C.J.S. *Cancellation of Instruments* § 44 (1938); 13 Am. Jur.2d *Cancellation of Instruments* § 37 (1964). Appellants seek the literal application of this rule by arguing the property *in specie* must be returnable or rescission cannot be granted. Although appellants are to receive the property *in specie* they exchanged, they are concerned that DMIC will not be receiving all of its stock. DMIC has not objected to the change in form: stock into money. The general rule cited above seeks to avoid one party's retaining benefits while the other party returns the property in its possession. Courts have recognized that the restoration need not be exact for rescission to be proper. 12 C.J.S., *supra.*

In a rescission case involving oil leases, the Oklahoma Supreme Court, noting that wells had been drilled since the transaction and leases could not be returned to the former owner, stated:

Therefore, the very nature of the properties involved rendered it impossible for the plaintiff to be restored to its former condition. In addition, the nature of the acts of fraud committed by the plaintiff contributed to the inability of the defendants to restore the status quo. . . . To impose an impossible condition such as this on the defendants as a condition precedent to rescission would be grossly unfair and inequitable and would have the effect of reducing this equitable remedy to an arithmetic formula which would drastically limit its availability. All that can reasonably or in justice be required in cases such as this is that the person seeking rescission reimburse the other party for all benefits they may have received.

*Oklahoma Co. v. O'Neil,* 440 P.2d 978 (Okl.1968).

We see nothing unjust or inequitable in allowing rescission in this instance although the property in its original form will not be exchanged.

■ Appellants' second attack on this rescission is that the status quo will not be achieved because title to the assets cannot be placed in Perpetual as that company no longer exists. Perpetual apparently was merged into DMIC, although the trial court did not make a specific finding as to merger or mere acquisition of Perpetual.[4] If merger occurred, as we assume for purposes of this appeal, Perpetual no longer exists and title could not be returned to it. Colo.Rev.Stat.Ann. § 7–25–105 (1973); Okl.Stat.Ann., Tit. 18, § 1.167 (1953) (the appropriate statutes of the two states where the companies involved in the merger were incorporated). There is nothing inherently inequitable in simply returning to appellants, in their individual capacities, the assets owned by Perpetual. The appellants have received the real value they exchanged and form should not be regarded over substance in this equitable matter.[5] *Ionic Petroleum, Ltd. v. Third Fin. Corp.,* 411 P.2d 492 (Okl.1966) (rescission is controlled by equitable principles); 27 Am.Jur.2d *Equity* § 127 (1966).

■ Appellants also contend DMIC is insolvent and liens on behalf of DMIC's creditors have attached to the Perpetual assets. The only support for this contention is the same conclusory argument in appellants' brief in support of their new trial motion. Because there is no factual basis in the record for that contention and no supporting legal authorities, we deem it inappropriate for review. Appellants' fourth contention, that DMIC cannot legally transfer the property to appellants, also is not supported factually and is not reviewable.

■ To understand appellants' fifth argument against the propriety of rescission, we recite the relevant facts, as appellant Clay testified at trial. Clay sold approximately 6,100 shares of DMIC stock to Bache & Company. He received an average of $2.76 per share. Of those shares, 4,700 were sold but could not be transferred due to the stop orders which DMIC had placed with the transfer agent of the securities. Bache had to go into the market and buy up shares to satisfy the purchasers of the nontransferrable shares. Bache was awarded a judgment against Clay for "13,000 and something." Clay agreed in his testimony that he had realized $12–15,000 on the transaction.[6] We cannot agree with appellants that this judgment must be paid by DMIC to achieve the original status quo. The proof adduced would not indicate that Clay has anything to complain about concerning his position resulting from his disposal of the stock.

■ Appellants also argued the rescission was not proper because it was not sought promptly. This issue was not presented in any manner to the trial court and is not appropriate for appellate review. *E. g., Eureka-Carlisle Co. v. Rottman,* 398 F.2d 1015 (10th Cir. 1968).

■ Appellants contend rescission is not authorized in this situation under Oklahoma law, the law the parties have both applied to consideration of the counter-claim. Okl.Stat.Ann., Tit. 15, § 233 (1966), provides that a party to a contract may rescind when his consent was given by mistake. The Oklahoma Supreme Court has recognized the power of a court of equity to cancel a contract for mutual mistake of fact. *Watkins v.*

4. There is evidence that DMIC merely acquired Perpetual; however, Articles of Merger were filed with the appropriate authorities.

5. The trial court did not order the merger set aside as appellees requested in their counter-claim (we do not infer that such action would have been possible); the court also made no disposition of the Perpetual stock exchanged by appellants for the DMIC stock. This latter failure may have recognized the fact that Perpetual had ceased to exist. Appellants, however have not complained that their stock has not been returned to them or that they have *not been returned the corporation they owned.*

6. One exhibit indicated Clay received $13,052.22 net on his sales of stock to Bache.

*Grady County Soil & Water Conservation Dist.,* 438 P.2d 491 (Okl.1968). The trial court concluded that a meeting of the minds had not occurred as to material elements of the transaction and that there was a bilateral mistake of fact as to the material elements of the transaction. We believe under these circumstances Oklahoma courts and most other courts would allow rescission. 12 C.J.S. *Cancellation of Instruments* § 27 (1938).

Appellants argue that the evidence presented at the trial compels a determination that forged proxies were voted at a Trail Mines stockholders' meeting held on March 13, 1970, when the amendments to its Articles were approved (appellants say half the proxies were forged). These amendments changed the corporation's name to DMIC, reduced the outstanding capital stock to 300,000 shares, and authorized 15,000,000 shares. The minutes of that meeting also reflect approval of the plan of merger between Trail Mines and Brayden. At trial, it was stipulated that appellants' counsel would be able to find someone in Oklahoma County who would testify the proxies were all signed by the same person. As the trial court correctly informed counsel the stipulation was not made that such testimony was true.

█ We assume for purposes of this appeal that forgeries were used to secure many proxies. Appellants contend that these forgeries invalidated the issuance of DMIC stock and made the stock issued to Harman and Clay void. The trial court did not make findings concerning this matter. The trial court did enter a conclusion of law respecting the alleged major culprit in the forgeries, appellee John Schroyer. That conclusion is as follows:

> Plaintiffs have never owned any stock in Trail Mines, Inc.; therefore, have no standing to complain of the actions of Schroyer pertaining to the merger of Trail Mines, Inc. and Brayden, Inc.

We agree with the trial court that these alleged forgeries are not the concern of these appellants. The court's order rescinding the sale certainly gives relief to these parties from any defect in the stock's issuance.

█ In relation to the alleged forgeries of proxies, appellants contend they are purchasers and sellers of stock within the securities laws, which appellants claim have been violated; appellee Schroyer argues appellants do not fit within the definition of purchasers and sellers in relation to possible forged proxies for the voting of Trail Mines' stock. Although there are many reasons which could be marshalled to support the result—giving judgment to Schroyer against appellants—we rely on the lack of a causal connection between Schroyer's alleged forgery activities and the alleged deceptive exchange of DMIC stock for the Perpetual stock. *See Vincent v. Moench,* 473 F.2d 430 (10th Cir. 1973).

█ We have considered appellants' other objections to the judgment below, including the argument concerning the nonlegend restriction of the stock. We find those arguments to be without merit especially in light of the rescissional remedy granted here. The trial court found that appellants and DMIC had relied upon Dooley's representations as to the value of their respective bargains and that appellants and DMIC had been misled. The trial court sought to do equity in a complicated situation where all parties claimed to have been misled as to material facts. Rescission was properly granted as the parties have been substantially returned to the status quo.

Affirmed.