The AMERICAN COLEMAN COMPANY, a Delaware corporation, Plaintiff–Appellant,

v.

INTRAWEST BANK OF SOUTHGLENN, N.A., a national banking association, and United Bank of Southglenn, N.A., a national banking association, Defendants–Appellees.

Nos. 88–1077 and 88–1220.

United States Court of Appeals, Tenth Circuit.

Oct. 20, 1989.

James L. Treece of Treece & Bahr, Littleton, Colo., for plaintiff-appellant.

John R. Webb and Susan B. Prose, of Holme, Roberts & Owen, Denver, Colo., for defendants-appellees.

Before McKAY, BARRETT and EBEL, Circuit Judges.

BARRETT, Senior Circuit Judge.

After examining the briefs and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); Tenth Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.

In this diversity case, the American Coleman Company (American Coleman), plaintiff below, appeals from the district court's order granting summary judgment on behalf of the defendant below, Intrawest Bank of Southglenn, N.A., the predecessor to the United Bank of Southglenn, N.A. (Bank). The court dismissed, with prejudice, American Coleman's action for damages for an alleged wrongful dishonor of a request for payment pursuant to a letter of credit.

In 1984, American Coleman sold some real property located in Littleton, Colorado, to James E. Gammon (Gammon) and the South Santa Fe Partnership (the Partnership) and took a note secured by a first deed of trust on the property. The note and deed of trust were dated November 16, 1984, but not recorded until November 21, 1984. The terms of the repayment of the note required Gammon and the Partnership to post a letter of credit, of which American Coleman would be the beneficiary.

The Bank, on behalf of its customer, Gammon and Associates, established a "Clean, Irrevocable Letter of Credit" in amount of $250,000 in favor of American Coleman. It was dated February 15, 1985, and was to expire on November 15, 1986. In consideration, the Bank received from Gammon a letter of credit fee and a second deed of trust on the Littleton property under a reimbursement contract whereby Gammon was to repay Bank for all payments made by Bank to American Coleman pursuant to the letter of credit. The letter of credit arrangement, once established, is often referred to as a statutory obligation on the part of the issuer (Bank) to honor drafts drawn by the beneficiary (American Coleman) that comply with the terms of the letter of credit. The transaction is separate and independent from the underlying business transaction between the beneficiary (American Coleman) and the Bank's customer (Gammon and Associates) which is contractual in nature. *See Arbest Const. Co. v. First Nat. Bank & Trust Co.*, 777 F.2d 581, 583–84 (10th Cir.1985). A letter of credit is not an evidence of indebtedness; it is merely a promise by a bank to lend money under certain circumstances. *Sprague v. United States*, 627 F.2d 1044, 1049 (10th Cir.1980); *Colorado Springs National Bank v. United States*, 505 F.2d 1185, 1190 (10th Cir.1974).

The Bank was to make funds available to American Coleman pursuant to its sight drafts to be accompanied by the "[o]riginal Letter of Credit and your signed written statement that Jim Gammon and Associates is in default on the Note and Security Agreement dated November 21, 1984, between American Coleman and Jim Gammon and Associates." (R., Vol. I, Tab 2, Exh. A). The above reference to a note and security agreement dated November 21, 1984, was an error, inasmuch as no such documents ever existed. The record does not resolve the dispute relative to the party responsible for the error. However, on November 16, 1984, Gammon and Associates executed and delivered to American Coleman a note in the principal sum of $1,037,500 secured by a first deed of trust

on the Littleton property sold which were recorded on November 21, 1984.

Thereafter, on December 31, 1985, and on May 16, 1986, American Coleman requested payments of $75,000, respectively, under the letter of credit. Both of these requests included the original letter of credit and the specific default language previously referred to, i.e., "Jim Gammon and Associates is in default on the Note and Security Agreement dated November 21, 1984, between American Coleman and Jim Gammon and Associates." (R., Vol. I, Tab 5, Exhibits A and B). Thus, a balance of $100,000 remained available to be drawn on under the letter of credit when on November 13, 1986, American Coleman tendered to Bank a sight draft in amount of $100,000 with the following statement appended thereto:

> [T]he American Coleman Company informs you that Jim Gammon and Associates is in default on the Note and Security Agreement dated November 21, 1984, and the Promissory Note dated November 16, 1984, between American Coleman and Jim Gammon and Associates.

(R., Vol. I, Tab 2, Exh. B).

Bank formally dishonored the draft on November 17, 1986, two days after the letter of credit expired because (1) the amount requested was in advance of any default, and (2) no default could occur until November 16, 1986. Bank did not give as a reason for dishonor the fact that the wording of American Coleman's request was not in strict compliance with the terms of the letter of credit.

In the district court, both parties moved for summary judgment, agreeing that there was no genuine dispute of material fact relative to Bank's liability for its dishonor of American Coleman's request of November 13, 1986, for the balance of funds under the letter of credit. Bank contended that the fact that the note was not then in default constituted a valid ground for dishonor and, further, that dishonor was proper because American Coleman's request was not in strict compliance with the terms of the letter of credit. American Coleman argued that Bank should be estopped from raising the defense of strict compliance because Bank had not asserted this defense at the time of dishonor. Further, should Bank not be estopped, American Coleman contended that its request for funds was in strict compliance with the terms of the letter of credit. In considering the cross-motions for summary judgment, the district court relied upon the pleadings, the briefs, affidavits and other documentation.

The district court found/concluded that Bank was not estopped from raising the defense of strict compliance and that American Coleman's request of November 13, 1986, was not in strict compliance with the terms of the letter of credit. The court did not reach the issue whether the original reason given by the Bank, i.e., that the note was not yet in default, was a valid ground for dishonor.

On appeal, American Coleman contends that the district court's decision was erroneous, contrary to law, and an abuse of discretion in the court's holdings that: (1) the note was not yet in default, (2) the demand was not in strict compliance, technically or literally, with the terms of the letter of credit, (3) the Bank was not estopped from raising lack of strict compliance as a reason for dishonor, and (4) the beneficiary (American Coleman) was not misled, and could not have cured the defect because Bank was allowed, pursuant to C.R.S. § 4–5–112(1)(a), to defer payment or dishonor for three banking days.

No contention is raised on appeal that substantial issues of material fact existed, precluding summary judgment under Rule 56(a) Fed.R.Civ.P. Even so, it is our duty to examine the record on appeal to determine whether any genuine issue of material fact pertinent to the ruling remains and, if not, whether the district court properly applied the substantive law. *Florom v. Elliott Mfg.*, 867 F.2d 570, 574 (10th Cir. 1989). And in making this evaluation, pleadings and documentary evidence must be construed liberally and in favor of the party opposing the motion. *Id.; Harman v. Diversified Medical Investments Corp.*, 488 F.2d 111, 113 (10th Cir.1973), appeal

after remand, 524 F.2d 361 (10th Cir.1975), *cert. denied,* 425 U.S. 951, 96 S.Ct. 1727, 48 L.Ed.2d 195 (1976). We are satisfied that no genuine issues of material fact remained when the district court granted summary judgment. Finally, in our *de novo* review, we have recognized different degrees of deference we must give to the interpretations and applications of state law by a resident federal judge sitting in a diversity action. *Wilson v. Al McCord, Inc.,* 858 F.2d 1469, 1473 (10th Cir.1988) (some deference); *Mullan v. Quickie Aircraft Corp.,* 797 F.2d 845, 850 (10th Cir.1986) (clearly erroneous standard); *Rhody v. State Farm Mutual Insurance Company,* 771 F.2d 1416, 1417 (10th Cir.1985) (great deference). We shall proceed under the "some deference" standard.

### I.

American Coleman argues that the district court was clearly erroneous in finding/concluding that the Note of November 16, 1984, was not yet in default when the November 13, 1986, demand for payment was made by American Coleman upon Bank. The record shows, however, that the district court made no such finding.

It is true that after the draft of November 13, 1986, was submitted Bank did inform American Coleman that it would not fund the letter of credit because the Note was not in default and could not be in default until November 16, 1986. Because this was the only ground relied upon by Bank to dishonor the draft, American Coleman argued, unsuccessfully, that Bank should be estopped from raising the defense of strict compliance in the district court action because it failed to assert the issue of nonconformity at the time it dishonored the draft.

The district court plainly did not find/conclude that the Note of December 16, 1984, was in default. In the district court's Memorandum Opinion and Order of December 17, 1987, the court stated:

Since I conclude that the bank is not estopped from raising the defense of strict compliance, and since I further find that American Coleman's request for funds was not in strict compliance with the terms and conditions of the letter of credit, I need not reach the issue of whether the original reason given by the bank (that the note was not yet in default) was a valid ground for dishonor.

(R., Vol. I, Tab 6, p. 5).

### II.

American Coleman contends that the district court erred in holding that the doctrine of strict compliance required American Coleman, as beneficiary of the letter of credit from Bank, as issuer, to literally and technically adhere to the requirements of the letter of credit. The district court found/concluded:

In the present case, it is clear that American Coleman's request for payment presented November 13, 1986 was not in technical or literal compliance with the terms of the letter of credit. American Coleman's reference to two different notes could easily have caused the bank's documents examiner some confusion. Accordingly, because I conclude that the rule of strict compliance, as it is applied in Colorado, requires literal compliance with the terms and requirements set forth in the letter of credit, and there was no such literal compliance in this case....

(R., Vol. I, Tab 6, p. 13).

The district court recognized that many courts refuse to allow an issuing bank to dishonor a demand for payment when the nonconformity between the language contained in the draft or demand and the terms contained in the letter of credit is trivial or technical. *Id.* at 9. The court observed that the Colorado Supreme Court has not as yet ruled on the distinction between traditional strict compliance versus substantial compliance, and particularly so where the deviation is "[a]s minor and technical as in this case." *Id.* at 13. Even so, based upon *Colorado National Bank v. Board of County Commissioners,* 634 P.2d 32, 40 (Colo.1981) ("To maintain the commercial vitality of the letter of credit device, strict compliance with the terms of the letter of credit is required"); *Guil-*

*ford Pattern Works, Inc. v. United Bank of Boulder*, 655 F.Supp. 378, 379–80 (D.Colo.1987) ("Colorado courts have held that in order to maintain the commercial validity of the vehicle of letters of credit, strict compliance with the terms and conditions is necessary."), and other cases and authorities, the district court reasoned that the Colorado Supreme Court "[w]ould shun the non-standard of substantial compliance and would require literal and technical adherence to the requirements of the letter of credit." (R., Vol. I, Tab 6, p. 13). We agree.

C.S.R. § 4–5–114(1) provides:

An issuer must honor a draft or demand for payment which complies with the terms of the relevant credit, regardless of whether the goods or documents conform to the underlying contract for sale or other contract between the customer and the beneficiary. The issuer is not excused from honor of such a draft or demand by reason of an additional general term that all documents must be satisfactory to the issuer, but an issuer may require that specified documents must be satisfactory to it.

In *Raiffeisen–Zentralkasse Tirol v. First National Bank*, 671 P.2d 1008 (Colo. App.1983), the court held that the obligation of the issuer of a letter of credit to honor the letter is wholly separate from the beneficiary's compliance with the terms of the underlying contract and is dependent solely on the terms and conditions contained in the letter of credit. This separation is supportive of the rule laid down in *Colorado National Bank v. Board of County Commissioners, supra,* that strict compliance with the terms of a letter of credit is required to maintain the commercial vitality of the letter of credit device. Failure on the part of Bank to oversee careful compliance with the terms of the letter of credit would have prohibited Bank from collecting the funds paid to the beneficiary (American Coleman) from its customer, the Partnership (Jim Gammon and Associates). *See Philadelphia Gear Corp. v. Central Bank*, 717 F.2d 230 (5th Cir.), *reh'g denied,* 720 F.2d 1291 (5th Cir.1983).

The duty of the issuing Bank is ministerial in nature, confined to checking the presented documents carefully against what the letter of credit requires. *Marino Industries Corp. v. Chase Manhattan Bank, N.A.,* 686 F.2d 112 (2d Cir.1982).

The district court found that the language in American Coleman's draft of November 13, 1986, referring to "[T]he Note and Security Agreement dated November 21, 1984, *and the Promissory Note dated November 16, 1984,* between American Coleman and Jim Gammon and Associates" was not in strict compliance because of the extra language that was included. (R., Vol. I, Tab 6, pp. 5–6). We agree.

It has been observed that most courts apply the "strict compliance" standard which leaves "no room for documents which are almost the same or which will do just as well." A minority of the courts hold that a beneficiary's "reasonable" or "substantial" performance of the letter of credit's requirement will do. However, no matter how one reads the cases, strict compliance endures as the central test. White & Summers, *Uniform Commercial Code,* Third Edition (1988), Vol. 2, § 19–5, p. 31. The authors state that cases applying the "reasonable" or "substantial" compliance standard "[a]re so few and their notion so inherently fuzzy that they give little or no clue as to what might be 'reasonable' or 'substantial' compliance." *Id.*

While it is apparent from the cases that minute discrepancies which could not possibly mislead a document examiner are usually disregarded, this does not constitute a retreat from the strict compliance standard applicable in this case inasmuch as the district court found that "[A]merican Coleman's reference to two different notes could easily have caused the bank's documents examiner some confusion." (R., Vol. I, Tab 6, p. 13). We agree.

We hold that the district court did not err in applying the strict compliance standard. We reject American Coleman's argument that reference in the November 13, 1986, draft to the second note was mere "surplusage." The apparent existence of two

promissory notes supports the district court's finding that Bank could have been misled by American Coleman's November 13, 1986, draft. American Coleman's contention that Bank could not have been misled by the draft because Bank drafted the letter of credit is without support in this record. The deposition testimony of American Coleman representative Joseph E. McElroy demonstrates that American Coleman's attorney assisted in drafting the letter of credit (R., Vol. I, Tab 4, Exh. F). There is no other evidence in the record on appeal relative thereto.

### III.

American Coleman contends that the district court was clearly erroneous in holding that Bank was not estopped from raising the defense of lack of strict compliance as a reason for its dishonor of the November 13, 1986, draft.

The district court recognized that in Colorado the general rule is that "[w]hen an issuer of a letter of credit formally places its refusal to pay upon specified grounds, it is held to have waived all other grounds," quoting from *Colorado National Bank v. Board of County Commissioners*, 634 P.2d 32, 41 (Colo.1981). However, the district court relied upon that same case for the proposition that the waiver-estoppel rule "[i]s limited to situations where the statements have misled the beneficiary who would have cured the defect but relied on the stated grounds to its injury." *Id.* at 41.

The district court relied on *Colorado National Bank v. Board of County Commissioners, supra,* for its ruling that Bank was not estopped from raising a ground for dishonor in defense of suit brought by American Coleman even though it failed to state such ground at the time of dishonor.

In *Colorado National Bank v. Board of County Commissioners*, the letter of credit provided for a 15-day sight draft. However, the beneficiary submitted a demand draft on the day the letter of credit was to expire. Bank gave several reasons for dishonor, but did not rely upon the fact that

the beneficiary had presented a demand draft in lieu of the required 15-day sight draft. Even so, the court held that the bank was not estopped from raising this ground in defense of the suit because the non-conforming demand draft was presented on the same day that the letter of credit expired. The court observed that under C.R.S. § 4–5–112(1)(a) a bank called upon to honor a draft or demand for payment under a letter of credit may defer payment or dishonor until the close of the third banking day following receipt of the documents. Thus, the court reasoned that the beneficiary could not have cured the defect since any subsequent presentment would have been untimely. Accordingly, the beneficiary could not have detrimentally relied on the bank's failure to state the discrepancy as a ground for dishonor.

■ We agree with the district court's conclusion that the facts of the instant case are quite similar to those in *Colorado National* and that American Coleman cannot be said to have detrimentally relied on Bank's failure to state the strict compliance discrepancy as one ground for dishonor, and that Bank is not estopped from raising the doctrine of strict compliance in its defense. November 13, 1986, was a Thursday. Three banking days thereafter would extend to November 18, 1986, just one day after Bank gave formal notice of dishonor. American Coleman could not have submitted another draft before the note expired. C.R.S. § 4–5–112(1) provides, in pertinent part:

A bank to which a documentary draft or demand for payment is presented under a credit may without dishonor of the draft, demand or credit (a) defer honor until the close of the third banking day following receipt of the documents....

■ American Coleman insists that the letter of credit in this case is clearly denominated a "clean" letter of credit as distinguished from a "documentary" letter of credit and that, accordingly, the three-banking-day rule does not apply. We

**1388**

agree that this statute applies only to a documentary draft or demand for payment. We disagree with American Coleman's contention that simply because the letter of credit here was denominated "Clean Irrevocable Letter of Credit" (R., Vol. I, Tab 2, Exh. A), it was treated by the parties as such.

C.R.S. § 4–5–103(1)(b) defines a "documentary draft" or a "documentary demand for payment" as one honor of which is conditioned upon the presentation of a document or documents. "Document" is defined therein as any paper, including invoice, certificate, notice of default, and the like. In the case at bar, American Coleman was required under the terms of the letter of credit to present the original letter of credit (a document) and a notice of default (a document) with each draft. American Coleman's effort to restrict the definition of "documentary draft" to documents of title or shipping invoices must fail.

We AFFIRM.