UNITED STATES COURT OF APPEALS

**Filed 6/27/96**

FOR THE TENTH CIRCUIT

---

NELS ANDERSEN,

       Plaintiff-Appellant,

v.

BRIGHAM YOUNG UNIVERSITY, a
Utah corporation; JOSEPH C.
BINGHAM, M.D.,

       Defendants-Appellees.

No. 95-4068
(D.C. No. 93-CV-61-G)
(D. Utah)

---

ORDER AND JUDGMENT[*]

---

Before EBEL, BARRETT, and HENRY, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

---

[*]    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff Nels Andersen appeals the district court's grant of summary judgment to defendants Brigham Young University (BYU) and Joseph C. Bingham, M.D., on his medical malpractice claims. Mr. Andersen claimed that Dr. Bingham's misdiagnosis of his cancer at its early stages has caused him additional injury and a reduced chance of survival. The district court held that Utah state law did not recognize a "loss of chance" theory of recovery, and granted defendants' summary judgment motion. We affirm.

## I. Standard of Review

We review the grant of summary judgment de novo, applying the same legal standard used by the district court. James v. Sears, Roebuck & Co., 21 F.3d 989, 997-98 (10th Cir. 1994). Summary judgment is proper when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Although it is not clear whether Mr. Andersen is contending on appeal that substantial issues of material fact exist precluding summary judgment, "it is our duty to examine the record on appeal to determine whether any genuine issue of material fact pertinent to the ruling remains and, if not, whether the district court properly applied the substantive law." American Coleman Co. v. Intrawest Bank of Southglenn, N.A., 887 F.2d 1382, 1384 (10th Cir. 1989).

When sitting in diversity, the district court applies the substantive law of the forum state unless a federal statute or constitutional provision directs otherwise. Salve Regina College v. Russell, 499 U.S. 225, 226 (1991). We review a district court's determination of

2

state law de novo, affording no deference to the court's conclusions. Id. at 238-39; Occusafe, Inc. v. EG & G Rocky Flats, Inc., 54 F.3d 618, 621 (10th Cir. 1995).

## II. Facts

On February 6, 1990, Mr. Andersen, while a student at BYU, sought treatment at the BYU health center for fevers, night sweats, and a persistent cough. He was seen by Dr. Bingham who suspected than Mr. Andersen was suffering from a "viral syndrome." Dr. Bingham asked Mr. Andersen to return the following week if he was not feeling better. Mr. Andersen did not return to the health center until February 23, 1990, complaining of fever, lethargy, a red throat, and mucous drainage. Dr. Bingham prescribed antibiotics and requested that Mr. Andersen return the following week for blood tests.

On March 12, 1990, Mr. Andersen again visited the health center indicating that the antibiotic had helped, but he was still suffering intermittent fever. Dr. Bingham ordered blood tests, prescribed another antibiotic, and requested Mr. Andersen to return if his symptoms persisted. On April 18, 1990, Mr. Andersen last contacted Dr. Bingham by telephone, indicating a decrease in his symptoms. Dr. Bingham urged Mr. Andersen to revisit the health center if his symptoms returned. Soon after this telephone contact, Mr. Andersen returned to his home in California for summer vacation.

Mr. Andersen remained free of symptoms until early August 1990, when he presented himself at the UCLA medical center emergency room suffering a high fever and vomiting. Following several weeks of extensive testing, he was eventually referred to the

3

hematology/oncology department of the medical center where it was determined that he had Hodgkin's Disease, stage III-B.[1] Under the care of Dr. Gary Schiller, Mr. Andersen was treated with chemotherapy. Following completion of the chemotherapy, Mr. Andersen remained free of the disease for twenty-two months, at which time additional disease was discovered in his abdomen, necessitating a second round of chemotherapy and x-ray treatment. At the time he filed his complaint, Mr. Andersen remained disease free, but claimed that Dr. Bingham's failure to diagnose the disease at an earlier stage seriously compromised his chance of long-term, disease-free survival. Dr. Schiller opined that, based on statistics of patients with Hodgkin's Disease who had been treated with chemotherapy, Mr. Andersen has a sixty percent chance of long-term, disease-free survival, whereas, if the disease had been discovered at an earlier stage, he would have had an eighty to ninety percent chance.

---

[1]     As described by the district court in its opinion,

> Hodgkin's Disease is a variety of lymphoma or cancer, which is divided into "stages" for purposes of prognosis. In Stage I, the disease is confined to one group of lymph nodules; in Stage II, the disease is confined to more than one nodule group, all on one side of the diaphragm; in Stage III, the disease is in multiple nodule groups on both sides of the diaphragm; Stage IV includes any involvement of bone marrow or the liver. The "stages" are also classified into subgroups, Subgroup A being asymptomatic, and Subgroup B exhibiting a variety of symptoms.

Andersen v. Brigham Young Univ., 879 F. Supp. 1124, 1126 n.1 (D. Utah 1995).

Mr. Andersen's complaint claimed damages due to (1) defendants' negligence in failing to diagnose the Hodgkin's at an earlier stage, thus reducing his long-term chance for disease-free survival, and (2) negligent infliction of emotional distress. The defendants moved for summary judgment, asserting that Mr. Andersen did not state a prima facie case of negligence under either claim because he had not established an injury in fact.

In a published opinion, Andersen v. Brigham Young University, 879 F. Supp. 1124 (D. Utah 1995), the district court granted summary judgment, holding that Mr. Andersen's only claimed injury in fact, a reduction in his statistical chance of long-term, disease-free survival, did not constitute a separate cause of action redressable under Utah law. Id. at 1130. It also granted summary judgment on Mr. Andersen's claim of negligent infliction of emotional distress due to the lack of some present physical illness or injury attributable to negligent acts of the defendants. Id. On appeal, Mr. Andersen does not challenge the district court's decision on his negligent infliction of emotional distress claim, but argues only that Utah would, or should, recognize a separate cause of action for "lost chance" under the facts of this case, and, in the alternative, that the district court should have dismissed his claims without prejudice to refile in the event he becomes ill or dies in the future.

### III. Discussion

To establish a prima facie case of medical malpractice in Utah, a plaintiff must establish "'(1) the standard of care by which the doctor's conduct is to be measured, (2) breach of that standard by the doctor, and (3) injury proximately caused by the doctor's negligence.'" Dikeou v. Osborn, 881 P.2d 943, 946 (Utah Ct. App. 1994)(quoting Chadwick v. Nielsen, 763 P.2d 817, 821 (Utah Ct. App. 1988)). A failure to establish any one of the elements justifies the grant of summary judgment to defendants. Id. The question on appeal, and the specific legal question addressed by the district court, is whether Mr. Andersen's alleged injury, a reduced chance of long-term, disease-free survival, is cognizable as satisfying the required element of injury in fact for purposes of establishing a prima facie case of negligence in Utah. The district court held that it did not, and we agree.

Mr. Andersen argues that the Utah Court of Appeals' case of George v. LDS Hospital, 797 P.2d 1117 (Utah Ct. App. 1990), cert. denied, 836 P.2d 1383 (Utah 1991), indicates that Utah would recognize a loss of chance cause of action in this case. In George, a team of nurses failed to inform doctors regarding the deteriorating condition of a patient, and the patient died. A jury found that although the omissions of the nurses were negligent, these omissions were not the proximate cause of the decedent's death. The Utah Court of Appeals reversed, based on an incorrect jury instruction stating that the jury could only find one proximate cause of death. Id. at 1122. Relying on several "lost chance" cases in other jurisdictions, the George court held that where, but for the negligence, the chance of saving

6

the life of the decedent would be increased, a jury could find that the negligence was a proximate cause of death.  Id.

The district court found George to be distinguishable because, in George, an actual injury was suffered when the patient died.  Andersen, 879 F. Supp. at 1129.  The court further determined that George did not serve "to recognize or create a new cause of action for mere reduction of statistical chances for survival."[2]  Id.

Here, the district court found Hansen v. Mountain Fuel Supply Co., 858 P.2d 970 (Utah 1993), to be more instructive on the question.  In Hansen, the court considered claims brought by plaintiffs who had been exposed to asbestos.  At the time of trial, the plaintiffs had no compensable injuries or illnesses which could be considered attributable to asbestos exposure.  The court affirmed the grant of summary judgment, holding that the existence of actual injury is required as a basis for recovery in negligence.  Id. at 973.

---

[2]	In his brief, Mr. Andersen discusses the various standards of recovery on claims of lost chance which have been recognized in other states.  As determined by the district court, however, the majority of the cases analyzed by Mr. Andersen were concerned with the element of causation, and not with the existence of injury.  See, e.g., James v. United States, 483 F. Supp. 581, 585 (N.D. Cal. 1980)(holding that delayed diagnosis or treatment which diminished the effectiveness of treatment was sufficient to establish proximate cause); Hicks v. United States, 368 F.2d 626, 632-33 (4th Cir. 1966)(holding that delay in operation nullified chance of recovery and was proximate cause of death)(applying Virginia law); Goff v. Doctors General Hosp., 333 P.2d 29, 33 (Cal. Ct. App. 1958)(holding that whether nurses' failure to timely notify doctor of patient's condition was a proximate cause of death was a question for the jury); Hamil v. Bashline, 392 A.2d 1280, 1289 (Pa. 1978)(finding liability where negligence caused an increased risk of harm resulting in death).

7

Mr. Andersen argues that the plaintiffs in <u>Hansen</u> were making only guesses as to the possibility of future injury due to asbestos exposure, while he presented statistical evidence that his chance of long-term, disease-free survival was diminished by Dr. Bingham's failure to diagnose his Hodgkin's at an earlier stage. It is undisputed that, at the time of trial, Mr. Andersen was disease-free with his only existing injury being the diminished chance of long-term, disease-free survival. Dr. Schiller's prediction regarding Mr. Andersen's prognosis, although statistically based, was still only a possibility of future injury, and as such, only a a slightly better educated guess than that of the plaintiffs in <u>Hansen.</u>

It is clear that merely placing Mr. Andersen in a class of persons who, because of delay in diagnosis, are subject to an increased risk of future injury, does not serve to create a compensable injury under Utah law. Mr. Andersen has failed to establish an existing injury as was required in <u>Hansen</u>, <u>see</u> <u>id.</u>, and therefore, the district court's grant of summary judgment to defendants was correct.

Finally, Mr. Andersen argues that the district court should have dismissed his action without prejudice, allowing him leave to refile in the event he does become ill again or dies. In support of his contention, Mr. Andersen relies on <u>Hansen</u>, wherein the Utah Supreme Court affirmed a grant of summary judgment based on plaintiffs' lack of actual, present injury. <u>Id.</u> In so doing, the <u>Hansen</u> court stated that "pursuant to the discovery rule," the plaintiffs would not be barred by the statute of limitations from bringing another action in

the event they would develop future injury or illness. <u>Id.</u> Mr. Andersen's interpretation notwithstanding, this does not translate as a dismissal without prejudice.

Here, as we have concluded, we find no error in the district court's ruling granting summary judgment to defendants. As in <u>Hansen</u>, Mr. Andersen may bring another action if and when he develops a recognizable injury. <u>See id.</u> ("Plaintiffs may, of course, bring another action if and when they do develop a serious disease as a result of their exposure."). However, Mr. Andersen is foreclosed from making further claims of lost chance based on appellee's conduct.

Defendants moved to strike portions of Mr. Andersen's brief and appendix as containing material not before the district court. Because none of the material that defendants find objectionable was considered in the disposition of this case, the motion to strike is DENIED. Mr. Andersen's motion to attach supplemental material is GRANTED. The judgment of the United States District Court for the District of Utah, granting defendants' motion for summary judgment, is AFFIRMED.

Entered for the Court

James E. Barrett
Senior Circuit Judge

9