**In re MARIN TOWN CENTER, a California limited partnership, Debtor.**

**Nos. C–91–3219 MHP, C–91–4435 MHP.**

United States District Court, N.D. California.

Feb. 18, 1992.

Merle C. Meyers, Elizabeth Berke–Dreyfuss, Constance Kleiner, Goldberg, Stinnett & MacDonald, San Francisco, Cal., for debtor/appellee.

Philip Nicholsen, Michael J. Lawson, Steefel, Levitt & Weiss, San Francisco, Cal., for Drexel Burnham Lambert, MRP, Inc., Drexel Burnham Lambert, Inc.

Mary Santandrea, Resolution Trust Corp., Legal Div., Costa Mesa, Cal., Dennis Montali, Andrea A. Wirum, Kenneth N. Russak, Pillsbury Madison & Sutro, San Francisco, Cal., for Resolution Trust Corp.

John E. McDermott, Marcia B. Pine, John C. Kirkland, Cadwalader, Wickersham & Taft, Los Angeles, Cal., William R. Pascoe, Pascoe & Rafton, San Rafael, Cal., for SunAmerica Realty Partners.

Minnie Loo, U.S. Trustee, San Francisco, Cal.

Joseph Patchan, Sr., Janice Lynn Green, Resolution Trust Corp., Legal Div., Washington, D.C., amicus curiae.

## MEMORANDUM AND ORDER

PATEL, District Judge.

SunAmerica Realty Partners brings this appeal to challenge three decisions of the United States Bankruptcy Court for the Northern District of California which held that SunAmerica was not entitled to the benefits of a stipulation between Marin Town Center and Resolution Trust Corporation, disallowed SunAmerica's vote on its $24 million unsecured claim and confirmed Marin Town Center's chapter 11 plan of reorganization.

## BACKGROUND

On May 8, 1990, Marin Town Center ("Debtor") filed a chapter 11 proceeding in the United States Bankruptcy Court for the Northern District of California. Docket No. 1, Appellant's Excerpts of Record for Appeal ("E.R.") Tab 51. Marin Town Center's only asset is the Corte Madera Town Center shopping center in Marin County. Docket No. 27, E.R. Tab 54. Gibraltar Savings F.A. ("Gibraltar") was the holder of a first deed of trust securing an obligation in excess of $60,000,000. *Id.* Gibraltar was taken over by the Resolution Trust Corporation ("RTC") on June 29, 1990. Drexel Burnham Lambert MRP Inc. ("Drexel") held a second deed of trust securing a note of approximately $6,000,000. *Id.*

On August 27, 1990, the Debtor entered into a stipulation ("stipulation") with Gibraltar which provided that Gibraltar would accept a substantial reduction of its secured claim in return for a cash payment. In addition, Gibraltar was granted relief from the automatic stay provided by 11 U.S.C. § 362(a) which enabled Gibraltar to foreclose on the shopping center if the Debtor failed to deliver $50 million in cash and a nonrecourse note for $2,778,015 to Gibraltar by January 15, 1991. Docket No. 105, E.R. Tab 67 at 4–5. The bankruptcy court entered an order approving the stipulation on September 14, 1990. Docket No. 106, E.R. Tab 68.

As of January 1991, the Debtor had not succeeded in its efforts to refinance its property through a new lender; however, RTC had not foreclosed on the property. Towards the end of that month, SunAmerica Realty Partners ("SunAmerica") learned of Debtor's failed plan of reorganization and RTC's right to foreclose immediately on the shopping mall under the stipulation. SunAmerica also learned from RTC that no offer was pending on the shopping mall. Gault Declaration, Docket No. 277, E.R. Tab 27, Ex.S. However, instead of negotiating with the Debtor, SunAmerica began

negotiations to buy the Gibraltar note directly from RTC. *Id.* As a result of SunAmerica's actions, Debtor brought suit in state court alleging breaches of fiduciary duty, confidence, and intentional interference with economic advantage. On May 1, 1991 the state court denied Debtor's motion for a preliminary injunction to prevent the transfer of the note from Gibraltar to SunAmerica. Docket No. 267, E.R. Tab 23, Ex.B. The court found that the financial condition of the Debtor was a matter of public record and that SunAmerica did not abuse confidential information in negotiating with RTC. *Id.* at 2.

On May 17, 1991, SunAmerica purchased Gibraltar's note from RTC for $41,500,000. Docket No. 248, E.R. Tab 6. RTC also expressly conveyed its rights under the stipulation to SunAmerica. *Id.* at 5–6. Subsequently, SunAmerica filed a Motion to Transfer Proof of Claim and a Motion for Relief from the Automatic Stay so as to permit it to foreclose on the shopping center immediately. Docket Nos. 245 and 250, E.R. Tabs 7 and 11. The bankruptcy court entered an order on June 28, 1991 which granted the Motion to Transfer, but denied the Motion for Relief from Stay without prejudice to renewal in sixty days. Docket No. 281, E.R. Tab 3. The bankruptcy court held that:

> The stipulation does not purport to inure to Gibraltar's transferee of assignee. It is entirely reasonable to assume that the debtor entered into the stipulation based upon a cooperative relationship with Gibraltar, and in the belief that Gibraltar would continue to work with it. The transfer of the claim to an entity only interested in making a killing is entirely a new situation not contemplated by the stipulation. In the absence of an express provision making the stipulation transferable, there is no justification for allowing SunAmerica to have the benefit of a stipulation the debtor reached with Gibraltar.

*Id.* at 2. Following the June 28 order, SunAmerica filed a Motion for Reconsideration based on newly discovered evidence. Docket No. 286, E.R. Tab 29. SunAmerica's new evidence included a declaration filed by Thomas P. Horton, Deputy Director for Asset Marketing for RTC, which stated that RTC's delay in foreclosing on Debtor was not due to a cooperative relationship with Debtor, but due to RTC's internal approval processes. The declaration also stated that RTC would have foreclosed on the property on May 24, 1991 but for the sale of the note to SunAmerica on May 17, 1991. Docket No. 282, E.R. Tab 32 at 4–5. SunAmerica's motion for reconsideration of the bankruptcy court's order was denied on August 20, 1991. Docket No. 347, E.R. Tab 2.

On August 30, 1991 Debtor filed a Plan of Reorganization and a Disclosure Statement. Docket Nos. 378 and 379, E.R. Tabs 84 and 85. The court approved the disclosure statement with some modifications on September 20, 1991. Docket No. 468, E.R. Tab 20. Debtor filed its Second Amended Plan of Reorganization and Second Amended Disclosure Statement on September 24, 1991. Docket Nos. 467 and 468, E.R. Tabs 114 and 115. In addition to voting its secured and unsecured claims, SunAmerica cast six other ballots as the transferee of several small creditors whose claims it had purchased. Docket No. 548, E.R. Tab 148. On October 14, 1991, Debtor filed an objection to the ballots cast by SunAmerica on the basis of "bad faith" under §§ 1126(a), (e) of the Bankruptcy Code. Docket No. 553, E.R. 153. SunAmerica filed a responsive brief on October 15, 1991. Docket No. 565, E.R. Tab 161.

On October 16 and 17, 1991 the court held a confirmation hearing on the Debtor's Second Amended Plan of Reorganization. Docket Nos. 615 and 616, E.R. Tab 50. On October 19, 1991, the court issued a Memorandum of Decision which held that the Plan was confirmable, allowed SunAmerica's vote on its $41.5 million secured claim, but disallowed SunAmerica's vote on its $24 million unsecured claim. Docket No. 574, E.R. Tab 49. The court reasoned that "SunAmerica's interest in this case is that of a potential purchaser of [Debtor's] property rather than a true creditor. [ ] Since SunAmerica has no interest whatsoever in seeing the debtor reorganize, its unsecured

claims should not be used to dilute the wishes of the true unsecured creditors." *Id.* at 5. On November 8, 1991 the court confirmed the Debtor's plan [1] but granted a stay of its order pending this appeal. Docket No. 604, E.R. Tab 48.

In addition to the briefs of the parties, Drexel has filed an amicus brief in support of Debtor and RTC has filed an amicus brief in support of SunAmerica.

DISCUSSION

### A. Legal Standard

On appeal, a district court must review a bankruptcy court's findings of fact under the clearly erroneous standard, and its conclusions of law de novo. *In re Van DeKamp's Dutch Bakeries,* 908 F.2d 517, 518 (9th Cir.1990). A factual finding is clearly erroneous where upon review of the entire evidence, the court is "left with the definite and firm conviction that a mistake has been committed." *Alan Neuman Productions, Inc. v. Albright,* 862 F.2d 1388, 1391 (9th Cir.1988).

In addition, this court may only reverse a bankruptcy court's denial of relief from the automatic stay if that court abused its discretion. *In re Tucson Estates, Inc.,* 912 F.2d 1162, 1166 (9th Cir. 1990). Abuse of discretion is demonstrated " 'when the record contains no evidence on which [the trial court] rationally could have based that decision.' " *In re Windmill Farms, Inc.,* 841 F.2d 1467, 1472 (9th Cir. 1988) (quoting *Hill v. United States Immigration & Naturalization Service,* 775 F.2d 1037, 1040 (9th Cir.1985)).

### B. Disallowance of SunAmerica's Vote on its Unsecured Claim

SunAmerica argues that the bankruptcy court committed reversible error by failing to allow SunAmerica to vote on its $24

million unsecured claim. Bankruptcy Code § 1126(e) authorizes the bankruptcy court to disqualify the ballot of "any entity whose acceptance or rejection ... was not in good faith or was not solicited or procured in good faith...." Debtor contends that the bankruptcy court was correct in disallowing SunAmerica's vote because the vote was not made in good faith and because a creditor holding a disputed claim is not entitled to vote upon a plan unless the court allows the vote provisionally.

### 1. Whether SunAmerica's Vote was in Good Faith

SunAmerica claims that the bankruptcy court erroneously deprived it of its right to vote its unsecured claim on the ground that SunAmerica's vote against the plan was not in good faith within the meaning of section 1126(e). Although the Bankruptcy Code does not define "good faith," the Supreme Court defined the term in *Young v. Higbee Co.,* 324 U.S. 204, 65 S.Ct 594, 89 L.Ed. 890 (1945).[2] The *Young* court held that the prohibition against votes cast in bad faith was intended to apply to claim holders

who "by the use of obstructive tactics and hold-up techniques exact for themselves undue advantages from the other stockholders who are cooperating." Bad faith was to be attributed to claimants who opposed a fair plan for a time until they were "bought off"; those who "refused to vote in favor of a plan unless ... given some particular preferential advantage."

*Young,* 324 U.S. at 211, 65 S.Ct. at 598 (quoting *Hearings on Revision of the Bankruptcy Act Before the Committee on the Judiciary of the House of Representatives,* 75th Cong., 1st Sess. (1937)). The test is whether a vote is cast for the ulteri-

---

1. Section 1129(a)(8) of the Bankruptcy Code provides that:
   (a) The court shall confirm a plan only if all of the following requirements are met:
   (8) With respect to each class of claims or interests—
   (A) such class has accepted the plan; or
   (B) such class is not impaired under the plan.

SunAmerica's vote on its $41.5 million secured claim in class D did not block the confirmation of the plan because that class was not impaired under the plan.

2. *Young v. Higbee Co.* dealt with section 203 of the Bankruptcy Act, the predecessor to section 1126(e) of the current Bankruptcy Code.

or purpose of securing some advantage to which the creditor would not otherwise have been entitled. Ulterior motives which have been held to constitute bad faith include "pure malice, 'strikes,' and blackmail, and the purpose to destroy an enterprise in order to advance the interests of a competing business ..." *In re Pine Hill Collieries Co.*, 46 F.Supp. 669, 671 (E.D.Pa.1942). Thus, section 1126(e) has been used to prevent minority creditors from extorting, and debtors from making, preferential payments in exchange for votes; it has also been used to prevent a competitor from advancing a competing business by blocking reorganization. *See, e.g., In re Mac-Leod Co., Inc.*, 63 B.R. 654 (Bktcy.S.D.Ohio 1986).

■ However, this case does not involve any of the scenarios which have been held to constitute bad faith. A vote cannot be said to have been cast in bad faith simply because it was voted for the purpose of blocking confirmation of a reorganization plan. In fact, rejection of a plan by "a party, largely interested in the Debtor before his acquisition of controlling rights, who withholds consent to a plan primarily because he believes its consummation will be more injurious to his investment in the Debtor than liquidation, meets the standard of good faith." *In re Pine Hill*, 46 F.Supp. at 671. Section 1126(e) does not require a creditor to have an interest in seeing the debtor reorganize. *In re Federal Support*, 859 F.2d 17, 19 (4th Cir.1988) ("Each creditor is expected to cast his vote in accordance with his perception of his own self-interest...."). Were this court to adopt Debtor's position on this issue, investors would have little incentive to purchase claims from any creditor in bankruptcy.

Accordingly, this court finds that the bankruptcy court was incorrect as a matter of law in disallowing SunAmerica's vote on its unsecured claim because it was voted in bad faith.

2. Whether SunAmerica's Claim should have been Allowed pursuant to Bankruptcy Rule 3018(a)

■ Irrespective of the propriety of the bankruptcy court's disallowance of SunAm-

erica's vote on the grounds that it was cast in bad faith, Debtor claims that a party has no right to accept or reject a reorganization plan until its claim has been allowed, and that a claim is not deemed allowed if an objection to the claim is pending. *See In re M. Long Arabians*, 103 B.R. 211, 215 (9th Cir. BAP 1989). Debtor further contends that because it had filed an objection to SunAmerica's claim which had not been resolved at the time of the confirmation hearing, SunAmerica did not hold an allowable claim. Docket No. 268, E.R. Tab 74. SunAmerica argues that the bankruptcy court's denial of its October 15, 1991 motion for temporary allowance of its claim was in error because it was based on the court's understanding that SunAmerica's claim was not acquired in good faith under section 1126(e).

Pursuant to Rule 3018(a), the bankruptcy court has discretionary power to permit a disputed claim to be voted. Bankruptcy Rule 3018(a) states in pertinent part:

Notwithstanding objection to a claim or interest, the court after notice and hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting the plan.

However, in its October 19, 1991 Memorandum of Decision the bankruptcy court, citing *In re Allegheny International, Inc.*, 118 B.R. 282 (Bktcy.W.D.Pa.1990), denied SunAmerica's motion to vote its unsecured claim on the grounds that SunAmerica's interest in the Debtor was not acquired in good faith. Docket No. 574, E.R. Tab 49 at 5. The court also found that "SunAmerica bought several unsecured claims solely for the purposes of voting the claims against the Plan." *Id.* at 4.

Debtor argues that votes must be disqualified under § 1126(e) when the votes are procured with an "ulterior purpose," such as in aid of an interest of the holder other than as a creditor. *Allegheny*, 118 B.R. at 289. In *Allegheny*, the debtor had proposed a reorganization plan that was supported by most of its creditors. However, Japonica Partners, L.P. ("Japonica"), opposed the debtor's plan and filed a com-

peting plan that would have given Japonica ownership and control of the debtor. In order to prevent confirmation of the debtor's plan, Japonica purchased claims in different voting classes sufficient to allow Japonica to block the acceptances of those classes. The debtor brought a motion seeking disqualification of Japonica's votes pursuant to § 1126(e). The bankruptcy court held that the votes should be disqualified because they were purchased in bad faith. The court based its determination on the facts that Japonica did not purchase significant claims until the voting periods on the debtor's reorganization plan, that Japonica purchased almost exactly the amount required to block the debtor's plan of reorganization, and, most significantly, that Japonica and the debtor were proponents of competing plans of reorganization. *Id.* at 289–90.

SunAmerica's position in this case is vastly different from that of Japonica in *Allegheny*. In this case, SunAmerica has had sufficient interest to block confirmation of the reorganization plan since it purchased the note from Gibraltar. The fact that SunAmerica also purchased certain Class F unsecured claims after the balloting began does not mean that SunAmerica's $24 million dollar unsecured claim, which was bought before Debtor proposed its reorganization plan and which was sufficient in-itself to block the plan, was purchased in bad faith. The mere purchase of claims to block confirmation of a plan does not constitute bad faith. *In re Gilbert*, 104 B.R. 206, 216 (Bktcy.W.D.Mo.1989). Indeed, the *Allegheny* court only disallowed the votes which Japonica purchased after the debtor began circulating its reorganization plans. *In re Allegheny International Inc.*, 118 B.R. at 290. In addition, SunAmerica has not proposed a competing reorganization plan. SunAmerica's rejection of Debtor's reorganization plan was motivated by a desire to protect its best interests as a creditor, not by a desire to promote a competing reorganization plan. Because of the substantial differences between the facts in *Allegheny* and those in this case, the court does not find *Allegheny* to be dispositive.

In addition, the bankruptcy court's findings of fact are not supported by the record. For example, the court asserts that "SunAmerica purchased the Gibraltar claim solely for the purpose of acquiring title to MTC's shopping center without risking a bidding battle at foreclosure sale," thus implying that SunAmerica was likely to have paid more for the shopping center at a foreclosure sale. Docket No. 574, E.R. Tab 49 at 4–5. However, the court does not state what facts lead it to this conclusion. In fact, since the court found that the value of the property was around $41 million, *id.* at 6, it had no reason to believe that after foreclosure any purchaser would have paid more than the $41.5 million SunAmerica paid for the Gibraltar note. The court also based its decision on "the way [SunAmerica] learned of Gibraltar's willingness to take a discount." *Id.* at 5. However, Debtor's allegations that SunAmerica abused confidential information to acquire the Gibraltar note were not in the record before the bankruptcy court. In fact, the bankruptcy court ignored the May 1, 1991 decision of the state court which denied Debtor's motion for a preliminary injunction to prevent the transfer of the note from Gibraltar to SunAmerica. *Id.* at 5. The state court explicitly found that SunAmerica did not abuse confidential information in negotiating with RTC. Docket No. 267, E.R. Tab 23, Ex.B. at 2. Because of the collateral estoppel effect of the state court decision, the bankruptcy court could not base its decision to prevent SunAmerica from voting its unsecured claim on the proposition that SunAmerica might "ultimately be liable to MTC" for its alleged abuse on confidential information.

Because the bankruptcy court had no facts to support its decision not to allow SunAmerica to vote its unsecured claim, and in light of the court's mistaken reliance on *Allegheny*, this court finds that the bankruptcy court abused its discretion in not allowing SunAmerica to vote its unsecured claim. Moreover, the bankruptcy court was incorrect as a matter of law in holding that SunAmerica's vote against Debtor's reorganization plan constituted

bad faith and in holding that SunAmerica's purchase of additional unsecured claims was made in bad faith. Accordingly, the decisions of the bankruptcy court to disallow SunAmerica's vote on its unsecured claim and to confirm Debtor's reorganization plan are REVERSED.[3]

### C. Motion to Strike Portions of SunAmerica's Reply Brief

▮ Debtor moves to strike portions of SunAmerica's reply brief on the ground that it improperly raises new issues that cannot be considered on appeal. The portions of SunAmerica's reply brief to which Debtor objects concern whether SunAmerica should have been allowed to credit bid its secured claim and whether the new capital to be contributed by the new capital partners is sufficient under the new value exception of the absolute priority rule. The court has decided that the bankruptcy court committed reversible error in not allowing SunAmerica to vote its unsecured claim. Therefore, the court need not reach the merits of Debtor's motion. Accordingly, Debtor's motion to strike portions of SunAmerica's reply brief is DENIED.

### D. SunAmerica's Appeal of the Denial of Lift Stay Motion

1. Whether SunAmerica's Appeal is Moot

▮ Debtor argues that SunAmerica's appeal from the bankruptcy court's denial of SunAmerica's relief from stay motion is moot because SunAmerica failed to obtain a stay pending appeal. Debtor cites *Algeran, Inc. v. Advance Ross Corporation*, 759 F.2d 1421 (9th Cir.1985) for the proposition that in automatic stay cases, failure to obtain a stay pending appeal requires a dismissal of the appeal for mootness.

▮ SunAmerica's failure to obtain a stay pending appeal does not render this appeal moot.[4] "It has never been the case ... that a party *must* secure a stay pending appeal." *In re AOV Industries, Inc.*, 792 F.2d 1140, 1147 (D.C.Cir.1986). Rather, when "changes in circumstances [make] it impossible for [the court] to fashion a remedy that would restore the interested parties to their former position," *Algeran*, 759 F.2d at 1423, the appeal must be dismissed as moot. In deciding whether to dismiss SunAmerica's appeal on mootness grounds, the court must consider whether effective judicial relief is possible. *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.*, 841 F.2d 92, 95–96 (4th Cir.1988).

As this court has decided that the bankruptcy court's decision confirming the reorganization plan must be reversed, effective judicial relief is possible in this case. Therefore, SunAmerica's appeal of the bankruptcy decision denying its Lift of Stay Motion is not moot.

2. Assignability of the Stipulation

▮ SunAmerica contends that the bankruptcy court erred as a matter of law in deciding that the stipulation between Gibraltar and Debtor was not assignable to SunAmerica. Debtor claims that the bankruptcy court correctly ruled that the stipulation was not assignable because the court found that the stipulation did not inure to the benefit of SunAmerica. The bankruptcy court based its holding on the grounds that "[i]n the absence of an express provision making the stipulation transferable, there is no justification for allowing SunAmerica to have the benefit of the stipulation the debtor reached with Gibraltar," and on the assumption that "the debtor

---

**3.** SunAmerica has objected to the bankruptcy court's decision not to allow it to vote its unsecured claims on the grounds that the bankruptcy court failed to give SunAmerica adequate notice and a hearing on whether it obtained its claims in good faith, and that the bankruptcy court improperly considered allegations in another case. SunAmerica has also objected to the bankruptcy court's decision to confirm Debtor's reorganization plan on the grounds that the court did not address the § 1129(b) cramdown requirements and that the plan violates the Absolute Priority Rule. Because this court finds that the bankruptcy court erred in disallowing SunAmerica's vote on its unsecured claims, this court need not reach the other objections posed by SunAmerica.

**4.** As SunAmerica points out, it did not seek a stay pending appeal because the denial of the motion to lift the stay effectively preserved the status quo.

entered into the stipulation based on a cooperative relationship with Gibraltar." Docket No. 281, E.R. Tab 3 at 2.

As a matter of law the bankruptcy court was incorrect in stating that the stipulation was unassignable in the absence of an express provision making it assignable. "[T]he assignability of intangible rights is the general rule, non-assignability the exception." 7 *Cal.Jur.3d* (Rev.), Assignments § 3; *Farmland Irrigation Co. v. Dopplmaier*, 48 Cal.2d 208, 222, 308 P.2d 732 (1957) (California statutes "clearly manifest a policy in favor of the free transferability of all types of property, including rights under contracts.").

In addition, the court's factual determinations are unsupported by evidence in the record. In this case, Gibraltar agreed to accept a substantial reduction of its secured claim in return for a cash payment and relief from the automatic stay. The principal benefit which Gibraltar derived from the stipulation was the right to foreclose on Debtor. Therefore, the bankruptcy court's finding that "[t]he transfer of the claim to an entity only interested in making a killing is an entirely new situation not contemplated by the stipulation," is clearly erroneous. Docket No. 281, E.R. Tab 3 at 2. As the transfer of the right to foreclose from RTC to SunAmerica did not increase the likelihood that the Debtor would be subject to foreclosure, Debtor cannot be said to have suffered a substantial detriment because of the assignment.

In its motion for reconsideration of the bankruptcy court's order refusing to lift the stay, SunAmerica presented evidence that RTC and Debtor were not engaged in a cooperative relationship. That evidence included a declaration filed by Thomas P. Horton, Deputy Director for Asset Marketing for RTC, stating that RTC's delay in foreclosing on Debtor was not due to a cooperative relationship with Debtor, but due to RTC's internal approval processes. Docket No. 282, E.R. Tab 32. The declaration also stated that, but for the sale of the note to SunAmerica on May 17, 1991, RTC would have foreclosed on the property on May 24, 1991. *Id.* at 4–5. However, the bankruptcy judge refused to consider that evidence, he said: "regardless of what was and wasn't presented to me before, why shouldn't I let the debtor go ahead and see if the debtor can expeditiously put together a plan that will work ..." E.R. Tab 5 at 21. As is evident from this statement, the court's legal conclusions were not based on the facts before it. Accordingly, this court holds that the bankruptcy court's finding that RTC and Debtor were engaged in a cooperative relationship is clearly erroneous and the court's conclusion that the stipulation was not assignable was incorrect as a matter of law.[5]

### 3. The Denial of SunAmerica's Lift Stay Motion

SunAmerica contends that it was entitled to relief from the automatic stay on the grounds that it acquired all of RTC's rights

---

**5.** Even if the stipulation were not assignable under state law in this case, federal statute preempts state law. RTC analogizes its situation to that of the FDIC, which courts have held has the power to assign freely the assets or claims that come into its control when acting in its capacity as a receiver, notwithstanding state law. *Federal Deposit Ins. Corp. v. Bank of Boulder*, 911 F.2d 1466 (10th Cir.1990). The *Bank of Boulder* court held that a Colorado law which restricted the transfer of letters of credit from FDIC/Receiver to FDIC/Corporation in the course of a purchase and assumption was pre-empted by federal law. The court so held because the federal statute controlling the FDIC gave the FDIC/Corporation the authority to purchase *any* assets, and where Congress has not entirely displaced state regulation in a specific area, state law is pre-empted to the extent that it

actually conflicts with federal law. Such a conflict arises when ... state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 1472 (quoting *Pacific Gas and Elec. v. State Energy Resources Conserv. & Dev. Comm'n*, 461 U.S. 190, 204, 103 S.Ct. 1713, 1722, 75 L.Ed.2d 752 (1983)).

RTC was chartered by Congress to "transfer any asset or liability of the institution in default (including assets and liabilities associated with any trust business) without any approval, assignment, or consent with respect to such transfer." 12 U.S.C. § 1821(d)(2)(G)(i). Following *Bank of Boulder*, any state law forbidding assignments would pose an obstacle to RTC's ability to accomplish this goal and would be pre-empted by federal law.

under the stipulation.[6] Debtor counters that the bankruptcy court was entitled to deny SunAmerica's motion pursuant to the court's equitable powers under § 105(a) of the Bankruptcy Code.

An assignee acquires and has standing to assert all of the rights of an assignor. *In re Elliot,* 385 F.Supp. 1194, 1196–97 (M.D.La.1974). Because the court has held that the stipulation between Gibraltar and Debtor was assignable to SunAmerica, it follows that SunAmerica was empowered by that stipulation to immediately foreclose on Debtor. However, Debtor argues that the bankruptcy court could take equitable considerations into account under section 105(a). Section 105(a) allows the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." The bankruptcy judge decided that irrespective of the evidence before him the motion for relief from stay should be denied pursuant to section 105(a) on the grounds that "the bankruptcy laws were formulated to encourage reorganization." E.R. Tab 5 at 23. The court's decision was merely advisory and therefore not legally binding because none of the parties had brought a section 105(a) motion. Furthermore, even if the court had initiated the motion sua sponte, it would have been required to hold a hearing on the motion before it decided the issue. In addition, the holding was an abuse of discretion because it was completely unsupported by the facts in the record. Accordingly, the court finds that the bankruptcy court's decision to deny SunAmerica's motion for lift of stay must be REVERSED.

*E. Motion to Strike Portions of RTC's Amicus Brief*

Debtor has moved to strike exhibit A of RTC's amicus brief on the grounds that it was not part of the record before the bankruptcy court and that it is not appropriate material for judicial notice. Exhibit A is the Statement of the Honorable John Robson, Deputy Secretary of the Treasury before the Subcommittee on Financial Institutions Supervision, Regulation and Insurance which describes the mission of RTC. As the bankruptcy court made both factual and legal errors in deciding that the stipulation was not assignable, this court need not consider the mission of RTC in deciding this appeal. Therefore, Debtor's motion to strike exhibit A of RTC's amicus brief is moot.

CONCLUSION

1. The decisions of the bankruptcy court to disallow SunAmerica's vote on its unsecured claim and to confirm Debtor's reorganization plan are REVERSED.

2. Debtor's motion to strike portions of SunAmerica's reply brief is DENIED.

3. The bankruptcy court's decision to deny SunAmerica's motion for lift of stay is REVERSED.

4. Debtor's motion to strike exhibit A of RTC's amicus brief is DENIED.

IT IS SO ORDERED.

---

**6.** SunAmerica also makes the argument that cause existed to grant it relief from the automatic stay under section 362(d)(1) of the Bankrupt- cy Code. The court need not reach this argument.